*Fee Paid*
*S1*
*(99)*

1   RONALD WILCOX, Bar No. 176601
    2160 The Alameda, First Floor, Suite FILING
2   San Jose, CA 95126
    Tel: 408-296-0400
3   Fax: 408-296-0486

4   Counsel for the Plaintiff

*FILED*

*2007 OCT 30  P 2:30*

*RICHARD W. WIEKING*
*CLERK*
*U.S. DISTRICT COURT*
*NO. DIST. OF CA. S.J.*

*ADR*

## U.S. DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

RHONDA HARRISON,                    )   Case No.:
                                    )
        Plaintiff,                  )   **COMPLAINT**
                                    )   **C07  05529**   *RS*
    v.                              )
                                    )   **DEMAND FOR JURY TRIAL**
CURTIS O. BARNES, P.C., CURTIS O.   )
BARNES, FORTIS CAPITAL, LLC, and    )
DANIEL RUPP,                        )
                                    )
                                    )
                                    )
        Defendants.                 )
_____)

## I. INTRODUCTION

1.  This action is brought by Plaintiff Rhonda Harrison for statutory, actual and punitive

    damages against Defendants, 15 U.S.C. §§1692 *et seq.* (hereinafter referred to as

    "FDCPA"), and related common law claims, which prohibit debt collectors from

    engaging in abusive, deceptive, and unfair practices.  Defendants engaged in unlawful

    and intrusive collection practices including making: 1) false threats of immediate suit, 2)

    false threats of immediate wage garnishment, and 3) unlawful calls to a consumer's

    landlord, employer, sister, and ex-husband.  Defendants' conduct is part of a widespread

    pattern and practice of unlawful collection abuse thereby warranting punitive damages.

COMPLAINT

1

2.  Defendants' unlawful collection practices caused Plaintiffs to suffer emotional distress in the form of fear, anxiety, stress, embarrassment, humiliation, and depression, amongst other negative emotions.

3.  According to the FDCPA, 15 U.S.C. 1692:

(a) There is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy.

(b) Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c) Means other than misrepresentation or other abusive debt collection practices are available for the effective collection of debts.

(d) Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e) It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

## II. JURISDICTION AND VENUE

4.  Defendants are authorized to do business and do business in California.

5.  Jurisdiction of this Court arises under 15 U.S.C. § 1692(k)(d), 28 U.S.C. § 1337, and supplemental jurisdiction exists for any state law claims pursuant to 28 U.S.C. § 1367.

COMPLAINT

6.  Venue in this District is proper in that Defendants transact business here and the conduct
    complained of occurred here.

### III. PARTIES

5.  Plaintiff, RHONDA HARRISON ("Ms. Harrison"), is a natural person residing in San
    Jose, California.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692(a)(3).

6.  Defendant, CURTIS O. BARNES, P.C. ("Defendant Law Firm") is a law firm in the State
    of California with a principal place of business at 390 W. Cerritos Ave., Anaheim, CA
    92805, and regularly engages in the collection of debts for third parties.

7.  Defendant Law Firm is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6) and Civil
    Code §1788.2.

8.  Defendant, CURTIS O. BARNES ("Defendant Barnes") is the chief executive officer,
    owns, and controls co-defendant CURTIS O. BARNES, P.C.  Defendant Barnes is
    directly involved in the day-to-day operations, including training and managing of
    employees, and reviewing or supervising the review of accounts.  Defendant Barnes
    regularly engages in the business of collecting debts owed to third parties.

9.  Defendant Barnes is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6).

10. Defendant Fortis Capital, LLC is a Limited Liability organized in Las Vegas, NV,
    currently in default.  The entity regularly engages in the collection of debts in default.

11. On information and belief, Defendant Fortis was created by Defendant Barnes to buy
    defaulted debts to collect on.

12. Defendant Fortis is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6) and Civil
    Code §1788.2.

13. Defendant DANIEL RUPP ("Defendant Rupp") is an employee of Defendant Law Firm
    and regularly engages in the collection of debts for third parties.

COMPLAINT

14. Defendant Rupp is a "debt collector" as defined by 15 U.S.C. § 1692(a)(6) and Civil Code §1788.2.

15. The Plaintiff alleges that at all times herein mentioned, each of the Defendants were, and is now, the agent, servant, employee and/or other representative of the other Defendants, and in doing the things herein alleged, was acting in the scope, purpose and authority of such agency, service employment, and/or other representative capacity with the permission, knowledge consent and ratification of the other Defendants.

16. Defendants authorized, approved and/or ratified the acts herein.

17. Any reference hereinafter to "Defendant" or "Defendants" or "Defendant Law Firm" without further qualification is meant by the Plaintiff to refer to all the defendants above.

## IV. <u>FACTUAL ALLEGATIONS</u>

18. Ms. Harrison allegedly incurred a consumer obligation to Bowflex. The alleged debt was incurred for personal, family or household purposes and was a result of a consumer credit transaction.

19. Ms. Harrison is informed and believes, and thereon alleges that sometime thereafter on a date unknown to Ms. Harrison, the debt was sold, assigned or otherwise transferred to Fortis Capital, LLC.

20. Ms. Harrison is informed and believes, and thereon alleges that Fortis Captial, LLC then hired Defendants to collect the debt from Plaintiff.

21. When Ms. Harrison was unemployed, she fell behind on some of her bills and sought the help of a credit counseling agency by the name of Credit Solutions. Credit Solutions contacted Defendants to inform them that they were representing Ms. Harrison in regard to the subject debt and that any communication about the debt should be directed to Credit Solutions.

COMPLAINT

22.  Despite knowing that all communications should be directed to Credit Solutions, and already possessing the location information of Ms. Harrison, Defendants began making annoying and invasive telephone calls to third-parties, including: Ms. Harrison's landlord, place of employment, her sister, and ex-husband.

**UNLAWFUL COLLECTION LETTER**

23.  On or about January 24, 2007, Defendants obtained Ms. Harrison's Equifax credit report which contained her current address in San Jose, CA.

24.  On or about January 24, 2007, Defendants had a related entity, Resource and Asset Management obtain Ms. Harrison's Experian credit report which contained her current address in San Jose, CA.

25.  On or about January 25, 2007, Defendants sent Ms. Harrison a collection letter, to her San Jose address, in an attempt to collect a debt.

26.  The January 25, 2007 letter made false, deceptive and misleading statements in an attempt to collect a debt.

27.  The letter falsely threatened Defendants would report the alleged debt to the credit reporting agencies.

**UNLAWFUL CALL TO LANDLORD**

28.  On or about February 27, 2007, the Defendants called Ms. Harrison's landlord, Ted Minshall ("Mr. Minshall") regarding Ms. Harrison.

29.  Mr. Minshall's wife took the call.  Defendants asked her if she was the owner of the house and if Ms. Harrison lived there.

30.  Defendants left a message with Mrs. Minshall for Mr. Minshall to call Defendants back.

31.  Mr. Minshall called Ms. Harrison who was embarrassed and humiliated by Defendants' unlawful conduct, and explained to Mr. Minshall that she sought the help of a credit counselor to assist her in dealing with her finances.

COMPLAINT

32. On or about February 28, 2007, Mr. Minshall called back Defendants at 1-866-477-8222 ext. 243 and spoke to Daniel Rupp ("Defendant Rupp" herein).

33. Defendant Rupp asked Mr. Minshall if he was legal counsel for Ms. Harrison.

34. Mr. Minshall told Defendant Rupp that he is not at liberty to discuss Ms. Harrison's personal information and that Ms. Harrison was working with a third party firm to resolve the "present situation."

35. Defendant Rupp then asked Mr. Minshall for Ms. Harrison's current employment and for confirmation of Ms. Harrison's address and/or phone number. Mr. Minshall suggested Defendant Rupp write to the address that he has if he wanted to reach Ms. Harrison. Defendant Rupp said he had already done so and told Mr. Minshall to pass a message to Ms. Harrison that she should contact him immediately.

36. Defendant Rupp then asked Mr. Minshall to tell Ms. Harrison that his firm refuses to work with "that firm" (Credit Solutions) and that his Firm will not be deterred by them.

37. Defendant Rupp also demanded Mr. Minshall tell Ms. Harrison to call Mr. Rupp by 5:00 p.m. that day to make arrangements to address the current situation.

38. Defendant Rupp said his firm had been retained by another company to do a complete investigation, including residence, assets, and place of employment. Defendant Rupp said he was not allowed to give out the name of the company that retained him because of attorney-client privilege.

39. Defendants engaged in an unlawful and impermissible communication with a third party.

40. Defendants made false, deceptive and misleading statements in an attempt to collect a debt.

41. Defendants failed to provide notices as required by federal and state law.

**FALSE THREATS OF IMMEDIATE SUIT**

COMPLAINT

42. After being informed of the telephone conversation Mr. Minshall had with Defendant Rupp, Ms. Harrison called Defendants to make payment arrangements.  She spoke with Defendant Rupp.

43. Defendant Rupp was hostile with Ms. Harrison on the phone and did not want to work out a payment arrangement with her.

44. Ms. Harrison stated that she couldn't pay much but would be willing to pay $100 per month.

45. Defendant Rupp stated Ms. Harrison made more money than he did, that it was good money, and that Ms. Harrison should be able to pay.

46. Ms. Harrison said that what she makes may sound like a lot but it wasn't in light of her monthly expenses.  Ms. Harrison explained she was a single mother, living paycheck to paycheck but Defendant Rupp didn't seem to care.  Ms. Harrison then continued to explain that she paid $1,250 for rent and over $700 for day care.

47. Defendant Rupp told her they were not going to take payment arrangements, and that she had better come up with a way to pay Defendants within an hour otherwise Defendants would sue her and garnish her wages.  Defendants used language that made Ms. Harrison believe they could immediately garnish her wages.

48. Defendant Rupp also stated Defendants are in Anaheim and when Defendants sue her, they will see her in downtown San Jose.

49. Defendants created a false sense of urgency and falsely threatened imminent action not intended, or which could not be taken.

50. Ms. Harrison's call with Defendant Rupp lasted for more than 30 minutes.

51. Defendant did not state that this was an attempt to collect a debt and any information obtained will be used for that purpose.

COMPLAINT

52. Defendant engaged in several calls where they failed to provide notices required under federal and state law. 15 U.S.C. 1692e(11).

53. Ms. Harrison gave Defendant Rupp her home phone number and told him who her employer was.

54. The parties argued with Defendant Rupp demanding Ms. Harrison's work phone number. Defendant Rupp hung up on Ms. Harrison when she refused to provide her work phone number.

55. Ms. Harrison was so upset and irritated over Defendants' abusive call that she had to take an hour away from work so that she could calm down and stop crying.

**UNLAWFUL CALL TO EMPLOYER; FALSELY IMPERSONATING ATTORNEY**

56. An hour later, Ms. Harrison learned that Defendants contacted her employer and were asking for her phone number even though Ms. Harrison had already given Defendants her phone number and after Defendants had already spoken to Ms. Harrison.

57. Defendants called Ms. Harrison's place of employment, and spoke to the Human Resources Manager.

58. Defendants requested the Human Resources Manager pass a message to Ms. Harrison to call Defendants.

59. Defendant Dan Rupp falsely impersonated he was an attorney.

60. Defendants were not calling to effectuate a post judgment remedy.

61. Defendants did not have Ms. Harrison's consent to communicate with third parties.

62. Defendants did not contact third parties pursuant to any court order.

63. Defendants engaged in an unlawful and impermissible communication with a third party.

64. Defendants failed to provide notices as required by federal and state law.

**UNLAWFUL COLLECTION LETTERS**

COMPLAINT

65. On or about March 1, 2007, Ms. Harrison received a collection letter from Defendants in an attempt to collect a debt or collect payment on a debt.

66. The March 1, 2007 collection letter stated in part:

"We have written you previously regarding the account referred to above. You have not disputed the debt within the thirty (30) day period after our letter to you. Accordingly, pursuant to the federal Fair Debt Collection Practices Act, we are permitted to assume that the debt is valid.

Demand is hereby made for immediate payment of the balance in full. Please make your check or money order in the amount of $3,138.89 payable to the Law Office of Curtis O Barnes. In the event this office has not received your payment in full within ten (10) days of the date of this letter, this office will evaluate undertaking such further collection efforts that may be reasonably necessary to protect the interest of our client."

67. Combined with Defendants' verbal threats to Ms. Harrison, the March 1, 2007 collection letter threatened some imminent action, including legal action, not intended and not taken within the time frame threatened.

68. The March 1, 2007 collection letter used false, deceptive, and misleading statements in an attempt to collect a debt or collect payment on a debt.

69. The March 1, 2007 collection letter created a false sense of urgency.

70. On information and belief Plaintiff contends attorney Curtis O. Barnes engaged in the unfair and unconscionable act of setting up an entity for the sole purpose of buying debt to threaten suit on.

## UNFLAWFUL CALLS TO MS. HARRISON'S SISTER AND EX-HUSBAND

71. Despite already having Ms. Harrison's contact information, Defendants continued to make calls to third parties, including Ms. Harrison's sister and ex-husband.

72. On or about March 21, 2007, Ms. Harrison's sister, Dina, received a message from Defendant Rupp at about 8:00 p.m. saying Defendants needed to speak to her about a matter. Defendants didn't say what the call was regarding, but volunteered it was the law firm of Attorney Curtis Barnes calling.

COMPLAINT

73. Dina called Defendant back and Defendant said his law firm had been retained to conduct an investigation involving Ms. Harrison.  Defendant also said he had just gotten off the phone with Frank Peek, Ms. Harrison's ex-husband.

74. Dina asked Defendant for the name of the person that retained his services, but Defendant said he couldn't tell her.

75. Defendant wanted to verify where Ms. Harrison worked and if she knew Ms. Harrison was a web publisher working for a temporary employment agency.

76. Defendant kept stressing to Dina how important it was for him to speak with Ms. Harrison, and asked Dina to pass a message to Ms. Harrison to call him.  Defendant said if he didn't hear back from Ms. Harrison he would have to take it to the next level.

77. Dina asked Defendant again about the investigation and Defendant said it was a preliminary asset-liability investigation.

78. Defendant then said he would be at his firm until 9:00 p.m. that night.

79. Defendant also verified Ms. Harrison's home address with Dina.

80. Defendants placed other calls to Dina in Southern California, leaving messages for vague messages for "Rhonda Ogle."

81. The calls came from a Ms. Rodriguez from 866-998-2500 x6272.

82. Plaintiff has never lived with her sister Dina in Southern California.

83. Defendants engaged in unlawful and impermissible communications with third parties.

84. Defendants failed to meaningfully identify themselves.

85. Defendants failed to provide notices as required by federal and state law.

86. Defendants did not sue Ms. Harrison within the time frame threatened.

87. Defendants did not intend to sue Ms. Harrison in the time frame threatened.

88. Defendants created a false sense of urgency.

COMPLAINT

89. Defendants' conduct in their telephone calls were with the intent to annoy, abuse and harass Ms. Harrison, and had the natural consequence of abusing and annoying Ms. Harrison and others.

90. Defendant Collector has a history of aggressive and abusive debt collection practices, using the telephone to instill fear and embarrassment, and engaging in improper and unlawful communications with third parties.

91. Defendants' unlawful tactics were not an aberration. Defendants have a history or plan of unlawful collection practices similar herein, including but not limited to: *Grinzi v. Barnes*, N.D. Cal., *Keicher-Snedden v. Curtis O. Barnes*, W.D. N.Y., *Hoff v. Barnes*, D. Or.; *Nevitt v. Barnes*, W.D. KY.

92. These tactics are exactly the kinds of abuses the FDCPA was designed to prevent.

## DEFENDANTS' UNLAWFUL CONDUCT CAUSED ACTUAL DAMAGES

93. Plaintiff suffered actual damages as a result of Defendants' conduct.

94. As a direct and proximate result of Defendants' conduct, Plaintiff experienced crying fits, anxiety, embarrassment, humiliation, depression, mental anguish, emotional distress, constant worry, lack of appetite, lack of concentration, crying fits, amongst other negative emotions.

95. As a result of the above violation, Defendants are liable to Ms. Harrison for statutory damages, actual and punitive damages, attorney's fees and costs.

## V. FIRST CLAIM FOR RELIEF - FDCPA

96. Plaintiff repeats and re-alleges the paragraphs above.

97. Defendants' acts and omissions, and course of conduct as more fully described above constitute numerous and multiple violations of the FDCPA, 15 U.S.C. §1692 et seq., including but not limited to the violations §§ 1692b, 1692c, 1692d, 1692d(5), 1692d(6), 1692e(4), 1692e(5), 1692e(10), 1692e(11), and 1692f, amongst others.

COMPLAINT

98.  As a result of Defendants' violations, Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees, and costs, pursuant to 15 U.S.C. § 1692k et seq.

## VI.  SECOND CAUSE OF ACTION – ROSENTHAL FDCPA

### (Against all Defendants except Curtis O. Barnes, the individual)

99.  Plaintiffs repeat, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

100.  The foregoing acts and omissions by these Defendants with respect to Plaintiffs in their attempts to collect a consumer debt from Plaintiff constitute numerous and multiple unfair, deceptive, misleading practices made unlawful pursuant to the California Rosenthal Fair Debt Collection Practices Act, including but not limited to Civil Code §§ 1788-1788.33, including §§ 1788.10, 1788.11, 1788.12, 1788.13, and 1788.17.

101.  Plaintiff is entitled to recover statutory damages, actual damages, reasonable attorney's fees and costs.

## VI. THIRD CLAIM FOR RELIEF – INTRUSION UPON SECLUSION

102.  Plaintiff repeats, re-allege, and re-incorporate by reference all of the paragraphs above as though fully stated herein.

103.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

COMPLAINT

104. Defendants intentionally interfered, physically or otherwise, with the solitude, seclusion and of the Plaintiff, namely, by engaging in unlawful and intrusive communications with third-parties and abusive telephone calls.

105. Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt, and thereby invading and intruding upon Plaintiff's rights to privacy.

106. Plaintiff has a reasonable expectation of privacy in Plaintiff's solitude, seclusion, and or private concerns or affairs.

107. These intrusions and invasions against Plaintiff by Defendants occurred in a way that would be highly offensive to reasonable persons in that position.

108. As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

109. Defendants also acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

## VIII.  FOURTH CLAIM FOR RELIEF – TORT-IN-SE

110. Plaintiff repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

111. Defendants violated a statutory duty to another and are thus liable under the doctrine of "Tort-in-se."

112. Defendants engaged in an unlawful course of conduct in violation of 15 U.S.C. § 1692 et seq.

113. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

114. Plaintiff is entitled to recover actual and punitive damages.

## VII. FIFTH CLAIM FOR RELIEF – CRIMINAL CONDUCT

COMPLAINT

115. Plaintiffs repeats, re-alleges, and incorporates by reference all of the paragraphs above as though fully stated herein.

116. According to Business and Professions Code, section 6129, "Every attorney who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action, with intent to bring suit thereon, is guilty of a misdemeanor."

117. Defendant attorney Curtis O. Barnes engages in unfair and unconscionable means to collect debts by directly or indirectly purchasing debts for the purposes of bringing suit in violation of Business and Professions Code 6129 and 15 U.S.C. § 1692f, and also threatens to take action he cannot legally take, in violation of 15 U.S.C. §1692e(5).

118. Defendants acted with oppression, fraud, and/or malice, thereby entitling Plaintiff to punitive damages in an amount according to proof and a finder of fact at trial.

119. Plaintiff is entitled to recover actual and punitive damages.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, respectfully prays that judgment be entered against the Defendants for the following:

    A.  Statutory damages pursuant to 15 U.S.C. § 1692k and Civil Code §1788.17 and Civil Code §1788.30.

    B.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692(k) and Civil Code §1788.17 and Civil Code §1788.30.

    C.  Actual and punitive damages.

    D.  For such other and further relief as may just and proper.

Respectfully submitted,

Ronald Wilcox, Counsel for Plaintiff       Date 10/29/07

COMPLAINT

1

2

3                             **DEMAND FOR JURY TRIAL**

4    Please take notice that Plaintiff demands trial by jury in this action.

5    _____         10/29/07
     Ronald Wilcox, Counsel for Plaintiff          Date
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT