RONALD WILCOX, Bar No. 176601
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: 408-296-0400
Fax: 408-296-0486

Counsel for Plaintiff

U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| RHONDA HARRISON<br><br>     Plaintiff,<br>vs.<br><br>CURTIS O. BARNES, P.C., CURTIS O. BARNES, FORTIS CAPITAL, LLC AND DANIEL RUPP,<br><br>     Defendants. | Case No.: C07-05529 JF RS<br><br>OPPOSITION TO MOTION TO SET ASIDE DEFAULT<br><br>Date: April 18, 2008<br>Time: 9:00 a.m.<br><br>HON. JEREMY FOGEL<br>U.S. District Court<br>280 South 1st St.<br>San Jose, CA 95112 |

**TABLE OF CONTENTS**

I.   DEFENDANTS' FAILURE TO FOLLOW THIS COURT'S STANDING ORDER......1

II.  BACKGROUND………………………………………………………………..1

III. FACTS RELATING TO DEFAULT……………………………………………..2

IV.  LEGAL ARGUMENTS……………………………………………………..3

    A.   CULPABLE CONDUCT………………………………………………4

    B.   LACK OF MERITORIOUS DEFENSE…………………………………10

V.   CONCLUSION…………………………………………………………..12

## I. DEFENDANTS' FAILURE TO FOLLOW THIS COURT'S STANDING ORDER

At the outset it should be noted that Defendants violated Local Rules and this Court's Standing Order of July 11, 2002 in that before filing any motion the moving party must meet and confer with the responding party to insure that any potential hearing date would not cause undue prejudice. This knowing and willful failure to abide by Local Rules and this Court's Standing Order has become a common practice, and such conduct should not be condoned. Furthermore, Defendants filed the instant motion on February 19, 2008,[1] yet noticed it to be heard fifty-nine (59) calendar days later, on April 18, 2008, further delaying this matter unnecessarily.

## II. BACKGROUND

Defendants engaged in unlawful and intrusive collection practices including making: 1) false threats of immediate suit, 2) false threats of immediate wage garnishment, and 3) unlawful calls to a consumer's landlord, employer, sister, and ex-husband. Defendants' conduct is part of a widespread pattern and practice of unlawful collection abuse. See, *Hoff v. Curtis O. Barnes, P.C.*, 07-0215 (D. OR)(false threats of immediate garnishment, despite not having a judgment, refusing to cease and desist), *Keicher –Snedden v. Curtis O. Barnes, P.C.*, 07-0157 (W.D. NY 2007)(unlawful calls to third parties), *Sorial v. Curtis O. Barnes, P.C.,* 08-01099 (C.D. CA 2008)(unlawful calls to third parties, calls to bother, mother, and threats of immediate garnishment and liens, despite not having a judgment), *Malinconico v. Curtis O Barnes, P.C.*, 08-CV-4-j-33 (M.D. FL 2008)(unlawfully communicating with someone represented by counsel, and attempting to collect a debt discharged in bankruptcy, threatening to report a debt already discharged in bankruptcy). This action was brought by Plaintiff Rhonda Harrison for statutory, actual and punitive damages against Defendants, pursuant to 15 U.S.C. §§1692 *et seq.*

---

[1] The Clerk entered the Default on January 23, 2008. Docket #10.

1  (hereinafter referred to as "FDCPA"), and related common law claims, which prohibit debt
2  collectors from engaging in abusive, intrusive, and unfair practices.

## III. FACTS RELATING TO DEFAULT

Plaintiff granted Defendants several extensions of time to Answer the Complaint while the parties discussed potentially resolving the matter. *See Declaration of Ronald Wilcox in Opposition to Motion to Set Aside Default* (hereinafter "*Decl. of Ronald Wilcox*"), ¶1. Then, on January 7, 2008, Plaintiff sent an e-mail requesting Defendants file Answers by January 11, 2008. Id. On January 11, 2008 Defendants sent Plaintiff's counsel an e-mail indicating they would be represented be San Francisco attorney- Tomio Narita. Id.   However, Mr. Narita made no effort to contact Plaintiff's attorney to inform him of the alleged representation. Id. Plaintiff's counsel waited another five days, expecting to hear from Tomio Narita, but did not hear from him. Id.   On January 16, 2008, Plaintiff's counsel sent Mr. Narita a fax requesting Defendants answer the Complaint. Id. **Exhibit 1**. Plaintiff waited another seven days, and still did not hear from Mr. Narita. Id.   Thus, Plaintiff waited more than two (2) weeks from when she first requested Defendants file an answer to the complaint before requesting a default, and waited twelve (12) days to hear from Defendants' alleged attorney, Mr. Narita. On January 23, 2008, the Clerk entered defendants' defaults (Docket #10). Id.

Defendants have requested Plaintiff set aside the defaults. *Decl. of Ronald Wilcox*, ¶2. Plaintiff offered a Stipulation to Set Aside the Defaults, Agree to Mediate, Set Schedule and [Proposed] Order.  Defendants rejected the stipulation. Id.

Defendants and their counsel have developed a strategy and/or practice of delay.  An intentional strategy of delay does not demonstrate the requisite excusable neglect necessary to set aside a default.

OPPOSITION TO MOTION TO SET ASIDE DEFAULT
2

The Court should not encourage Defendants' intentional delay tactics, which only seem to create more litigation than is necessary, and prejudices the Plaintiff.  Allowing a Defendant to unilaterally extend it's time to answer by failing to respond to Plaintiff's communications, and daring Plaintiff to take a default, only later to attempt a claim of excusable neglect, is not at all what the Federal Rules have in mind when providing for relief from default.

**IV.    LEGAL ARGUMENTS**

As a general rule the standard under F.R.C.P. 55 and 60 is the same; a defendant seeking to set aside a default must demonstrate "mistake, inadvertance, surprise or excusable neglect."[2] However, it appears debt collectors, and defendants' counsel, have developed a strategy of unilaterally extending their time to answer, by simply failing to timely answer the complaint, and *causing*, or *allowing*, defaults to be taken, and then claiming such was excusable neglect.  That is not mistake, inadvertence, surprise or excusable neglect, and thus not "good cause" for relief.

The Ninth Circuit has ruled that relief may be denied: 1) where the default resulted from the defendant's culpable conduct, *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) and *Benny v. Pipes*, 799 F.2d 489, 494 (9th Cir.1986), or 2) where the default is caused by a failure to maintain a tickler system or other procedural safeguards, *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933 (5th Cir. 1999).

Furthermore, the Northern District of California has refused to set aside a default when the Defendant debt collector culpably allowed a default to be entered by failing to answer by the extended deadline. *Cohen v. Murphey,* 222 F.R.D. 416 (N.D. Cal. 2004).  The court stated the facts as:

---

[2] "Although a defendant seeking relief from mere entry of default need only show "good cause" (F.R.C.P. 55(c)), these same factors are generally considered in determining "good cause."  Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (Rutter Group 2007) p. 6-39, [6:153], citing *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 368 (7th Cir. 1983).

OPPOSITION TO MOTION TO SET ASIDE DEFAULT
3

Plaintiff filed a complaint on December 23, 2003, alleging that defendants were abusive in collecting an auto loan and violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. Answers were due by February 9, 2004. On January 28, 2004, the parties agreed to extend the deadline for defendants to answer to February 16, 2004. On February 18, 2004, after no answers had been filed, plaintiff's counsel sent a facsimile reminding defense counsel of the deadline, and offering to extend the deadline by two days. Defendants still did not answer, resulting in plaintiff requesting the Clerk to enter default on March 11, 2004. The Clerk did so on March 16, 2004. Defendants subsequently filed answers on March 24, 2004, claiming that a computer system problem caused the delay.

The court held:

defense counsel received notice that the deadline for filing had passed two days after the answers were due. Plaintiff's counsel sent a facsimile on February 18, 2004, not only reminding defendants that the due date for their answers had passed, but also offering a two-day extension to file the answers and warning that plaintiff would move for entry of default if no answers were filed by February 20, 2004. While this facsimile provided defense counsel with the correct filing date, he failed to contact either plaintiff's counsel or the court to request an extension time, and has offered no explanation for his failure to do so. In fact, he failed to do anything until after the entry of default nearly a month later. This undermines his assertion that he filed the answers as soon as he discovered the error. Defense counsel's actions in this case do not constitute excusable neglect, and his failure to timely file the answers is culpable conduct.

A.     **CULPABLE CONDUCT**

According to the revered treatise, *Federal Civil Procedure Before Trial*, a defendant should not be able to cause the default and then later seek relief from it. Schwarzer, Tashima & Wagstaffe p. [6:197], citing *Meadows v. Dominican Republic,* 817 F.2d 517 (9th Cir. 1987). Furthermore, as the treatise explains, "A deliberate default for purposes of delay or other strategic reason may be culpable conduct." *Id.* at [6:200.10], citing *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631 (2nd Cir. 1998).

Defendants' motion alleges (Motion, 4:5-13, Docket #16):

"Subsequently, when it became clear that the case was not going to be resolved promptly, Defendants located outside counsel (Mr. Narita) to defend them, and Defendants informed Mr. Wilcox that he should contact Mr. Narita. Mr. Barnes then instructed his staff to mail the signed engagement agreement and retainer to Mr. Narita' office. Unfortunately, the signed engagement and retainer were lost in the mail, and Mr. Barnes did not learn of this until after he returned from a trial. Upon confirming that the retainer and agreement had

been lost, Mr. Barnes promptly instructed his staff to resend the retainer and the engagement agreement."

Defendants' argument belies credibility. Defendants knew their answer was due by the extended deadline of January 11, 2008. Why didn't they answer by the extended deadline? Defendants' declaration indicates Mr. Narita agreed to represent Defendants on January 11, 2008 *Decl. of Rob Barnes*, ¶4. Docket #17. Why didn't Mr. Narita, pick up the phone and call Plaintiff to inform her of his alleged representation and request a further extension? Why did Mr. Narita utterly fail to respond to Plaintiff's January 16, 2008 fax/letter cautioning Defendants to file an answer or Plaintiff would take a default? Why did Mr. Narita not communicate at all with Plaintiff's counsel to immediately inform him on January 11, 2008, of the alleged representation, or at any time in the more than (2) two-week period Plaintiff was awaiting an answer? If Defendants were aware they had not retained Mr. Narita (because of some alleged retainer agreement that was returned by the post office undelivered), why did they, or Mr. Narita, not inform Plaintiff of the delay? Defendants effectively cutoff Plaintiffs ability to communicate with them directly, by alleging they had counsel, and then their alleged counsel refused to communicate with Plaintiff, while at the same time Defendants failed to answer by the extended deadline of January 11, 2008 (the default was subsequently entered January 23, 2008). Thus, Defendants were delaying the matter, prejudicing the Plaintiff, and daring Plaintiff to take a default. Such culpable conduct does not warrant relief.

Furthermore, an attorney's track record of compliance with court orders and deadlines, while not dispositive, is a factor that may be considered in determining whether his or her missing a deadline constitutes excusable neglect. *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 362 (7th Cir. 1997). Defendants' counsel has developed a strategy of and/or practice of delay. On January 25, 2008, Plaintiff sent Mr. Narita an e-mail and fax stating: (*Decl. of Ronald*

*Wilcox*, ¶3. **Exhibit 2**):

Dear Tomio,

I am writing to you about three (3) cases where you have failed to take appropriate action.

**I ask that you call me today at 11 a.m. to discuss these matters, or inform me what time you are available today and I will call you.**

**1. McIntyre v. Resurgence**
On December 11, 2007, we met and conferred by telephone for more than 30 minutes. Then on December 18, 2007, I served your client with written discovery, as we discussed during the telephone conversation. Defendants have failed to properly respond to the discovery. Therefore, the Requests to Admit are deemed admitted. Furthermore, I sent you a draft CMC statement (within 14-days of the date we met and conferred, as required by the F.R.C.P.) and a Stipulation to Mediate. You failed to respond to those e-mails, despite being required to do so by the rules. On January 16, 2008, I again sent you a Stipulation to Mediate. You failed to respond again. Defendant has a duty to cooperate with Plaintiff in drafting a Joint CMC Statement pursuant to the F.R.C.P. and Orders of the Court.

I reviewed my files in other cases handled by your office and see a disturbing pattern of delay (see below e-mail):

**From:** Ronald Wilcox, Esq. [mailto:ronaldwilcox@yahoo.com]
**Sent:** Wednesday, December 14, 2005 8:05 AM
**To:** Tomio Narita
**Subject:** RE: Amber v. Krauss/CSC discovery requests

Dear Tomio,

The record reflects that the parties have met and conferred on several matters, including discovery. Whether or not the parties have completed their exchange of initial disclosures yet does not change that fact. We look forward to timely responses to the discovery requests pursuant to the Federal Rules of Civil Procedure.

Of course, if you would ever like to discuss something with me you are welcome to call.

Indeed, I will be here all day.

Thank you,

Other examples of your unwillingness to meet and confer with me and other counsel are plentiful. I simply request you fulfill your obligations under the F.R.C.P. so we can move

OPPOSITION TO MOTION TO SET ASIDE DEFAULT
6

matters along in the interest of judicial economy and efficiency.

Finally, you have also failed to provide available dates for depositions. Therefore, I will be noticing depositions forthwith.

**2. Harrison v. Barnes**
I have conferred with Robert Barnes, in-house counsel for Defendant Curtis O. Barnes, P.C. On Monday, January 7, 2008 I sent Robert Barnes an e-mail requesting Defendants answer the complaints no later than Friday, January 11, 2008. At about 5 p.m. on Friday, January 11, 2008, Robert Barnes sent an e-mail claiming he hired Tomio Narita to represent Defendants in this matter. However, you failed to contact me, and failed to timely file an Answer to the Complaint. Thereafter, on Wednesday, January 16, 2008, I faxed you a letter requesting the Defendants file answers to the complaints, or Plaintiff would be forced to take their defaults. Defendants failed to file an Answer to the Complaint and failed to seek an extension. As such, please be advised I took the defaults of the defendants on January 23, 2008

Ironically, in *Amber v. Krauss* (above) you and I stipulated to, and the Court granted, an Order allowing an Answer to be filed by 9/12/05. However, you ignored that Court order and failed to file an Answer, thereby forcing Plaintiff to again request your compliance with the rules after your client was in default for more than two weeks.

**3. Nicander v. Hecker**

Laurence Hecker has been stalling this matter since around December 20, 2007. At first he feigned that he needed an extension to discuss settlement. Then, after Plaintiff granted an extension he refused to discuss settlement or respond to my letters regarding such. Then he indicated he was hiring/hired a San Francisco attorney, but would not tell me who (as with *Harrison v. Barnes* above it appears you delayed in calling me). On January 23, 2008 Plaintiff filed a Request for Default. You have failed to file an Answer, failed to call me, and you are apparently attempting to cause the same unnecessary delays you caused above.[3]

**I ask that you call me today at 11 a.m. to discuss these matters, or inform me what time you are available today and I will call you.**

On January 29, 2008, Plaintiff sent Mr. Narita another e-mail and fax (*Decl. of Ronald Wilcox*, ¶4. **Exhibit 3**):

Dear Tomio,

Attached please find an e-mail I sent you Friday, January 25, 2008 (also sent to you by

---

[3] In a letter dated January 25, 2008, Defendant Hecker alleged Tomio Narita would represent him. On January 29, 2008, Tomio Narita sent Plaintiff a letter indicating he did not represent Defedant Hecker. Mark Ellis currently represents Mr. Hecker and the parties agreed to set aside the defaults in that matter.

OPPOSITION TO MOTION TO SET ASIDE DEFAULT
7

1  fax). I am still waiting for you to tell me what time you are available to talk about theses three (3) cases. I am happy to call you tomorrow at 8 a.m. Otherwise, please tell me what time you are available and I will call you.

Plaintiff called Mr. Narita on February 1, 2008. In attempting to explain Defendants failure to timely answer the complaint Mr. Narita first stated that Defendants representative, Robert Barnes, went out of town for a trial and failed to secure Mr. Narita's representation before leaving town.[4] *Decl. of Ronald Wilcox*, ¶5. Near the end of the conversation Mr. Narita then added he believed *one of the documents* (from one of the parties), necessary to retain him had been lost in the mail. Id. Mr. Narita did not explain why Defendants did not answer by the extended deadline of January 11, 2008; or why he, and/or Defendants, failed to contact Plaintiff, or respond to Plaintiff's January 16, 2008 fax and e-mail stating unless an answer was filed Plaintiff would take a default. Id. Nor did he explain why he did not respond to the fax and confirm he was indeed representing Defendants and would file an answer. Id.

Similarly, the court should also consider Defendant's (attorney Curtis O. Barnes) track record of compliance with court orders and deadlines, as a factor that may be considered in determining whether its missing the extended deadline to answer constituted excusable neglect. *Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 362 (7th Cir. 1997). Indeed, Defendant Curtis O. Barnes, pushed the Hon. Patricia Trumbull to the brink of incarcerating him for repeated failure to abide the court's rules and orders. On March 3, 2006, Judge Trumbull ordered Curtis Barnes to appear and show cause why he should not be held in contempt, with coercive civil contempt sanctions, including incarceration until he complied with the court's prior order to complete the terms of settlement. *Grinzi v. Barnes, et al.*, Docket #117, 04-01655 (N.D. Cal. 2004). On March 30, 2006 Judge Trumbull ordered (Docket #121):

---

[4] An attorney's "press of business" is not excusable neglect. *Pioneer Investment Services, Co. v. Brunswick, Associated, Ltd. Partnership*, 507 U.S. at 396, 113 S. Ct. at 1449.

OPPOSITION TO MOTION TO SET ASIDE DEFAULT
8

> In light of Defendants compliance with this court's prior orders, albeit belated, the court will not order the incarceration of Curtis Barnes. However, a contempt citation is warranted based on Defendants repeated violation of the court's rules and this court's orders. The docket reveals that this court has had to issue orders to show cause against Defendants on three separate occasions in order to secure their compliance with this court's rules and orders. If in the next five years either Defendant, or any attorney of record for Defendants in this matter, represent any litigant in any action in the United States District Court for the Northern District of California, they shall serve and file a copy of this order in that action.

The court was referring to: *Grinzi v. Curtis Barnes, et al.,* 2004 U.S. Dist. LEXIS 20366 (N.D. Cal. 2004) and *Grinzi v. Curtis Barnes, et al.,* 2004 U.S. Dist. LEXIS 20979 (Defendants Curtis O. Barnes et al., sanctioned for failure to comply with initial disclosure obligations by the deadline set by the court, and for putting "Plaintiffs and the court through a meaningless exercise" of having to address a motion to compel what the F.R.C.P. already obligates Defendants to provide); *Grinzi v. Barnes, et al.,* 2005 U.S. Dist. LEXIS 33094 (Defendants Curtis O. Barnes et al., sanctioned under 28 U.S.C. §1927 for unreasonably multiplying litigation and failing to perform by the deadline agreed to in a settlement agreement. Defendants failed to appear before the court to discuss their inaction. The court assessed a sanction of $2,880, plus $100 per day until Defendants complied with the court's order to abide by the settlement terms).

On February 5, 2008 Plaintiff sent Mr. Narita the following e-mail (*Decl. of Ronald Wilcox*, ¶6. **Exhibit 4**):

> Dear Tomio,
>
> Actually, I was waiting to hear back from you. When we spoke about this case on Friday, February 1, 2008, I [sic] I asked you about deposition dates for Defendants. You indicated they were not parties to the action (incidentally, if they are not parties to the action then I'm not sure they can sign a Joint CMC statement. Lets discuss the rules). As I mentioned, since they are not parties then Plaintiff will subpoena their depositions. Please obtain their available dates and call me this morning (408-314-6210). Please don't make this like other cases where you refuse to provide available dates, causing Plaintiff to notice a deposition only to then have Defendants claim they have a calender conflict.

1  Additionally, I had been waiting for you to call me to explain what excusable neglect
   warranted setting aside the defaults.  On Friday, February 1, 2008, you did not mention
2  any.  Also, as I mentioned, it seems like a waste of judicial resources and economy
   to set aside a default when this case comes down to damages.  Lets use our time, and the
3  court's time, wisely.  To that end I think it would be wise to consent to the Magistrate
   Judge.  Please let me know by today whether you will consent to the
4  Magistrate Judge, otherwise I will request reassignment.

5  Thanks,

6
   Ronald Wilcox
7  Attorney at Law
   2160 The Alameda, First Floor
8  San Jose, CA 95126
   Tel: (408) 296-0400
9  Fax: (408) 296-0486
   ronaldwilcox@mac.com
10

11
    Moreover, it appears to be defendants' (attorney Curtis O. Barnes, and his office) practice
12
to default, instead of timely filing answers to complaints in federal actions.  See, *Frier v. Curtis*
13
*O. Barnes*, et al., 07-942 (M.D. FL), Default Entered, July 18, 2007 (Docket #7), See *Request for*
14
*Judicial Notice in Opposition to Motion to Set Aside Default* (hereinafter "RJN"), **Exhibit 1**;
15
*Hoff v. Curtis O. Barnes, P.C.*, 07-215 (D. OR. 2007), Default entered May 22, 2007 (Docket
16
#9), Default Judgment Entered on October 31, 2007, for $10,000 in general damages, $10,000 in
17
punitive damages, plus attorney's fees and costs (Docket #20) RJN, **Exhibit 2**; and *Keicher-*
18
*Snedden v. Curtis O. Barnes, P.C.*, 07-0157 (W.D. NY) Default Entered, July 19, 2007 (Docket
19
#4), RJN, **Exhibit 3**.
20
21  B.     **LACK OF A MERITORIOUS DEFENSE**

22      Ultimately, this case comes down to damages.  Indeed, in their motion Defendants fail to
23
articulate any meritorious defense, and merely claim they have filed an answer denying the
24
allegations. The Northern District of California has denied requests to set aside defaults when
25

the Defendants fail to demonstrate a defense in their motion (*Cohen v. Murphey*, 222 F.R.D. 416, 418 (N.D. Cal. 2004):

> Defendants have also failed to demonstrate a potentially meritorious defense. *See Hawaii Carpenters' Trust Fund v. Stone,* 794 F.2d 508, 513 (9th Cir.1986). While defendants claim in their answers that they are not "debt collectors" as defined by law, neither their answers nor their Rule 60 motion contain any facts supporting this defense. Their answers contain only denials, and their Rule 60 motion fails to even mention a defense. *See Tri-Continental Leasing Corp. v. Zimmerman,* 485 F.Supp. 495, 497-499 (N.D.Cal.1980) (holding that conclusory allegations were insufficient to set aside default, and parties must provide adequate factual and legal bases for defenses). Defendants have not offered points and authorities, declarations, or other supporting documents that would permit the court to assess the probability of a meritorious defense. Defendants have not met their burden of showing that they have a meritorious defense.

Herein, Defendants proposed Answer, ¶6b-10, filed as Exhibit B to Docket #17, admits Defendants have *at times* engaged in the practice of collection of debts for third parties, but denies all other allegations. Thus, similar to *Cohen v. Murphey*, Defendants' proposed answer contains only factually bald denials. Furthermore, similar to the facts in the *Cohen v. Murphey* matter, Defendants' motion brief does not even mention a meritorious defense, provides no factual or legal bases for any defenses, does not provide any points and authorities, declaration, or other supporting documents that would permit the court to assess the probability of a meritorious defenses. Simply put, as in *Cohen v. Murphey*, Defendants have not met their burden of showing that they have a meritorious defense.

Regardless, the test for setting aside a default is disjunctive and Plaintiff is not required to show Defendants lack a meritorious defense, or that Plaintiff was prejudiced.[5] *Cohen v. Murphey*, 222 F.R.D. 416, 418 (N.D. Cal. 2004). Indeed, it is Defendants that must demonstrate they were <u>not</u> culpable (i.e., they did not allow a default to be taken). *Id.* at 416. However, it was

---

[5] Incidentally, The Seventh Circuit has suggested that the additional time and money plaintiff will be required to spend on the litigation if the default is set aside may be evidence of prejudice. *Chrysler Credit Corp. v. Macino*, 710 F.2d 363, 367 (7th Cir. 1983).

the Defendants' failure to answer by the extended deadline that caused Plaintiff to assert her rights under the F.R.C.P. and have the clerk enter a default.

## V. **CONCLUSION**

At one point, in an attempt to forge a possible resolution to this controversy, Plaintiff contacted Mr. Narita and inquired as to whether the Defendant would agree to a stipulation setting aside the default and agreeing to a scheduling order. Mr. Narita refused.

In sum, refusing to communicate with Plaintiff, and daring Plaintiff to take a default is culpable conduct, and not the excusable neglect necessary to warrant setting aside a default. A defendant should not be able to cause the default and then later seek relief from it. Schwarzer, Tashima & Wagstaffe, *Federal Civil Procedure Before Trial* (Rutter Group 2007), p. [6:197], citing *Meadows v. Dominican Republic,* 817 F.2d 517 (9th Cir. 1987). Furthermore, as the treatise explains, "A deliberate default for purposes of delay or other strategic reason may be culpable conduct." Id. at [6:200.10], citing *Gucci America, Inc. v. Gold Center Jewelry*, 158 F.3d 631 (2nd Cir. 1998). Defendants have failed to demonstrate excusable neglect and/or a meritorious defense, and thus Defendants' Motion to Set Aside the Default must be denied.

Dated: 3/28/08                                                   /s/Ronald Wilcox
                                                                 Ronald Wilcox, Attorney for Plaintiff